PER CURIAM.
Appellant was found guilty of second degree murder in the shooting death of Robert *776 Portee. Appellant raises three points on appeal. Two of these were unpreserved, and, in any event, would have resulted in an affir-mance had we been able to reach their merits. The sole issue for our consideration is the sufficiency of the evidence to support denial of appellant’s motion for judgment of acquittal. Appellant argues that although the circumstantial evidence created a strong suspicion that he killed Robert Portee, it was not sufficient to sustain his conviction for second degree murder. We disagree and affirm appellant’s conviction.
After the state rested, appellant moved for a judgment of acquittal. To overcome a defendant’s motion for judgment of acquittal in a case based entirely on circumstantial evidence, the state has the burden of presenting evidence from which the jury can exclude every reasonable hypothesis except that of guilt. See Atwater v. State, 626 So.2d 1325, 1328 (Fla.1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994). Generally, “[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.” State v. Law, 559 So.2d 187, 188 (Fla.1989). Whether the evidence fails to exclude all reasonable hypotheses of innocence is a question for the jury’s determination, and the appellate court will not reverse where there is substantial competent evidence to support the jury verdict. Id. When a motion for judgment of acquittal in such a case has been made, the proper task of the trial judge is to review the evidence, taking it in the light most favorable to the state, in order to determine whether there is competent evidence from which the jury could infer guilt to the exclusion of all other inferences. Id. at 189.
Earlier during the Easter Sunday of the fatal shooting, appellant and the victim were involved in an altercation at a pool hall in Indiantown. Appellant’s brother, Brunei, and a cousin, Herman Roberts, joined the fight. The victim ran away but later returned to the pool hall area and called out challenges to continue the fight. He was shouting in the direction of a vacant lot, where witnesses later heard shots fired. One witness, John Thompson, saw Roberts cross the street and retrieve a large bag from some bushes. This witness had seen Roberts hiding guns in the bushes about five days before the shooting. A pool hall employee saw appellant carrying what appeared to be a gun case and walking past the vacant lot just seconds before she heard three loud gunshot blasts. Another witness saw appellant lift an object approximately three feet long from the bushes and hide it underneath the right side of his shirt. He then saw appellant walk into the alleyway behind the pool hall. A few seconds later, several gun shots rang out and gun flashes were seen coming from that direction. The victim ran a short distance and then fell, mortally wounded in his chest.
One witness’ testimony tended to rule out appellant’s relatives as the shooters. Thompson said that when he first heard shots ring out, he looked in the direction of the shotgun blasts. He could plainly see appellant’s brother, Brunei, standing at the corner of one of the houses and leaning against the wall. He saw appellant’s cousin, Herman Roberts, whom he recognized by his clothing, on the ground away from the area of the gunfire. However, he did not see the appellant anywhere in open view at the time of the shooting. Other witnesses also testified that appellant was not visible when the shots were fired.
Next to an abandoned building near the shooting site, police investigators found two twelve-gauge .00 buckshot casings. They also recovered additional ammunition inside the building and a white plaid jacket on the ground near the abandoned building. The jacket had three live 12 gauge shotgun shells in its pocket. One of the police officers, who had known appellant since childhood, recognized the jacket as being similar to one often worn by appellant. On the roof of a small house behind the building, about forty feet from where discharged shells were found, police located a rusty but operable shotgun that had recently been fired. The shells found in the shotgun and the shells found in the abandoned building were the same brand, same make, and same buckshot. The *777 state was unable to establish the shotgun as the murder weapon or recover any fingerprints or other forensic evidence linking appellant to any of the items found.
Appellant made several contradictory statements to the police concerning whether he was at the scene and whether he heard the gunshots. Appellant denied knowing anything about the shooting and being near the area of the abandoned building where the shots were fired at any time on the day of the crime. Additionally, appellant told the police that he was not present ■ when the shots were fired and did not hear any gunshots. Yet, he said he was standing next to Sergeant White and talking to him when he heard gunshots and saw people ducking and screaming. Sergeant White, while on patrol duty that day, had come to the scene seconds before the shooting, because he saw a large crowd assembled near the pool hall. Sergeant White disputed appellant’s version and testified that appellant was not with him when the shots erupted. He did not see appellant until five minutes after the shooting. Appellant and his brother, Brunei, walked over to Sgt. White after a bystander pointed out appellant, Brunei, and his cousin. Brunei showed Sgt. White his hands and denied doing anything. Appellant simply stood behind his brother and said nothing. Appellant left his Indiantown home for Stuart soon after the shooting and did not return until he was arrested and brought back. He told Detective Gary Bach, the officer who took his statement, that he went to Stuart because he was scheduled to appear in court for a sentencing there and because he had received threats from the victim’s family, warning him “to stay out of Indiantown.”
Appellant argues that the state’s evidence against him was entirely circumstantial and did not adequately refute appellant’s theory of defense that someone else did the shooting. He pointed out conflicts in the witnesses’ statements regarding appellant’s presence or absence at particular locations at certain times. He further emphasized the lack of forensic evidence connecting him to the crime and argued that others who had fought with the victim had equal motive and opportunity to commit the murder. However, based on our review of the record, we determine that the jury could reasonably have concluded from the facts that appellant shot the victim. Albeit the state’s case was based primarily on circumstantial evidence, the state met its threshold burden by introducing competent evidence inconsistent with appellant’s theory of defense. The jury could reasonably have concluded that appellant was carrying a gun, went down the alley out of sight, fired the shots from where the discharged shells were found, and then hid the shotgun on the low roof of one of the small homes. As stated above, where the proof or circumstantial evidence contradicts the defendant’s theory of innocence, and the inferences pointing to guilt are sufficiently strong to permit a jury to find guilt beyond a reasonable doubt, the case should go to the jury. Thomas v. State, 512 So.2d 1099, 1101 (Fla. 5th DCA 1987), rev. denied, 520 So.2d 586 (Fla.1988), and cases cited therein.
We, therefore, affirm the judgment and conviction.
AFFIRMED.
STONE, C.J., FARMER and TAYLOR, JJ., concur.