GRIFFIN, J.
 

 Tiffany Rose [“Rose”] appeals her judgment and sentences for attempted robbery with a firearm and aggravated assault (firearm) after a jury trial. We find merit only in her claim of error in failing to grant her motion for judgment of acquittal at the close of the State’s case with respect to the attempted robbery with a firearm count.
 

 At trial, the State’s principal witness was the victim. She testified that on July 24, 2009, her doorbell rang. She saw a woman at the door, and she stepped outside to see what the woman wanted. The woman said, “we’re lost” and “[w]e’re trying to find Palatka.” She said to the woman “if you’re going down south down this way, you’re heading the right way.” The woman then asked “is that close to Orange Park,” a question the victim found surprising. She said “well, that’s Jacksonville.” As she looked north, a second woman (later identified as Rose) came out from behind a bush in the front of her house, pointing a silver, longer-barreled, snub-nosed handgun at her face with elbows locked and finger on the trigger. The victim told the two women to get away from her, but the woman with the gun walked closer, within two feet. The women told her to “hush, hush, be quiet, hush;” but she was “scared to death” and ran. The women then drove off in a white vehicle. She got the tag number, AEJ-5450, and called 911 from a neighbor’s house.
 

 A recording of the victim’s 911 call was entered into evidence and published to the jury. On the recording, the victim can be heard saying that she did not recognize either of the women, and describing the woman with the gun as having a hat on and “like a mask around her face.” Also, Deputy Michael Soles testified during the trial that, in an initial description of the second woman, the victim stated that the second woman “was wearing a cloth over the face, ball cap, sunglasses.”
 

 At trial, Officer Thomas Staten Keisler testified that while he was working patrol on July 24, 2009, he became involved in a felony traffic stop of a white vehicle, the driver and passenger were secured and identified, the driver was “Miss Longstreet,” and the passenger was “Miss Rose.” Crime scene technician Aimee Tin-gen [“Tingen”] detailed the search of the white vehicle. When asked to “summarize generally what was discovered during the search,” Tingen stated:
 

 
 *379
 
 There was [sic] personal items, which included an ID and a credit card for Andrea Longstreet, several cell phones, several pairs of sunglasses, various jewelry, a black duffel bag which contained duct tape, rope, two pairs of gloves. Also, a — a crowbar pry tool, a flashlight, a box of Winchester shotgun shells, a magazine that contained .380 bullets, as well as a Maverick Mossberg, model 88, 12-gauge shotgun.
 

 In
 
 Franqui v. State,
 
 699 So.2d 1312, 1317 (Fla.1997), the Florida Supreme Court addressed the elements of attempted armed robbery, providing:
 

 In order to prove attempted armed robbery, the State must show: (1) the formation of an intent to commit the crime of robbery; (2) the commission of some physical act in furtherance of the robbery; and (3) the use of a firearm.
 
 See
 
 §§ 777.04(1), 812.13(2)(a), Fla. Stat. (1993);
 
 Cooper v. Wainwright,
 
 308 So.2d 182, 184 (Fla. 4th DCA),
 
 cert. dismissed,
 
 312 So.2d 761 (Fla.1975). In this context, intent may be proved by considering the conduct of the accused and his colleagues before, during, and after the alleged attempt along with any other relevant circumstances.
 
 Cooper,
 
 308 So.2d at 185.
 

 Taken together, the evidence adduced at trial suggests that Rose intended to commit an offense, but it is insufficient to establish that Rose intended to commit robbery.
 

 This case is similar to
 
 Thomas v. State,
 
 349 So.2d 743, 743 (Fla. 1st DCA 1977). There, the defendant, unmasked, had rung the doorbell of a Pensacola residence; and “[w]hen the occupant opened the door, ... two masked men rushed in brandishing shotguns.”
 
 Id.
 
 at 744. “[Wjaiting sheriffs deputies” intercepted them, and “[o]ne of the masked intruders was shot dead.”
 
 Id.
 
 The intruder who was shot dead had “two days before, met with sheriffs deputies and advised them in detail that the three intended to commit a robbery in the manner in which the episode unfolded on the night of the 28th.”
 
 Id.
 
 The First District Court of Appeal concluded that the deceased informant’s statements were inadmissible hearsay and that the evidence other than the inadmissible hearsay was insufficient to establish a specific intent to commit robbery.
 
 Id.
 
 It explained in part:
 

 Although the informant’s recitation amply and, as it turned out, accurately depicted the criminal plan, the deputy’s testimony of the recitation was hearsay which could not competently evidence the purpose of the accused survivors of the invasion. That [the defendant] and his confederates intended to force entry by means of weapons, and to commit some violent offense on the premises, cannot be doubted; but the dead informant’s prior accusation is not competent proof that the survivors intended robbery rather than murder, rape, or some other vicious assault....
 

 Id.
 
 Here, similar to
 
 Thomas,
 
 the evidence is insufficient to establish that Rose had the specific intent to commit robbery. Therefore, the trial court erred by denying Rose’s motion for judgment of acquittal with respect to the charge of attempted robbery with a firearm. We reverse the conviction for attempted robbery with a firearm and remand for entry of an amended judgment and for resentencing.
 

 REVERSED and REMANDED.
 

 ORFINGER, C.J., and COHEN, J„ concur.