GROSS, J.
After a jury trial, Jamie Grant was convicted of (1) attempted armed robbery while wearing a mask and carrying a firearm and (2) possession of a firearm with an altered serial number. We affirm in part and reverse in part, holding that the evidence was sufficient to support Grant’s convictions, but insufficient to subject him to mandatory minimum sentencing pursuant to Section 775.087(2), Florida Statutes (2010).[1]

The State’s Case

On November 17, 2010, at approximately 3:20 p.m., Grant parked his car in the partially concealed driveway of a newly constructed home. He walked about 100 yards to a jewelry store, making his approach from the store’s windowless side. Once at the store, Grant “forcefully” yanked twice on the store’s entrance door with his left hand, while keeping his right hand in the front pocket of his hooded sweatshirt. The force of Grant’s tug was so “aggressive” and strong that it “shook the frame of the store” and alerted every employee to his presence.
Unknown to Grant, due to a recent “snatch and grab” incident, the store’s owner installed a security system which required customers to be “buzzed” into the store by an employee. When the owner reached for the buzzer, one employee warned of Grant’s potential dangerousness while others yelled, “[Djon’t let him in.” *1082 This reaction derived not only from Grant’s aggressive entry attempt, but primarily from the way he was dressed; despite being a hot day, Grant was wearing a hooded sweatshirt over his head, gloves, and a “do-rag” covering his face from his nose down. Further, when Grant tried to open the door, he kept his right hand in the “sagging” front pocket of his hoodie, as if he was cradling a heavy object.
Apparently recognizing the futility of trying to enter the store, Grant took off running. While Grant was running, observers noticed that he atypically kept his right hand in his hoodie pocket, protecting a “bulging” object; however, none of the witnesses could testify as to what the object actually was. Grant drove away in his car “at a high rate of speed.” Later, the store’s owner obtained a surveillance video, which was shown to the jury at trial.
The store owner called the police shortly after Grant left the scene. Upon receiving a BOLO report, Detective Jason Jones began tailing Grant’s car in an unmarked vehicle and called for backup. Once backup arrived, Detective Jones turned on his strobe lights and honked his horn to effectuate a stop. However, Grant continued driving for another mile before eventually stopping at a red light.
Once Grant’s car came to rest, Detective Rick Lombardo approached on foot from the driver’s side, prompting the visibly sweating Grant to state that he was returning the car to his grandmother. As Detective Lombardo came closer, he suddenly yelled “gun!” after observing the butt of a handgun on the passenger seat, “partially wrapped in a pair of gloves which was underneath a black hooded sweatshirt.” Upon this announcement, Grant “twist[ed] towards th[e] direction” of the gun; however, before anything could happen, the detective forcibly removed Grant from the car, placed him on his stomach on the ground, and applied handcuffs.
A search of Grant’s person revealed that he had hinged handcuffs in his right rear pocket and a purple velvet Crown Royal bag in his right front pocket. Following the search, Grant lamented to the detectives, “[Tjimes are tough, I usually don’t do this sort of thing.”
Additionally, from Grant’s car, officers recovered an unloaded .357-caliber revolver, a black hooded sweatshirt, sunglasses, a pair of gloves, and a “do-rag type face cover.” At trial, a firearms examiner testified that the revolver was functional, although its “serial number was obliterated.”

Trial Motions and Verdict

After the State rested, Grant made a two-fold motion for judgment of acquittal. First, Grant argued that the State failed to prove the elements of attempted armed robbery, since there was no evidence demonstrating his specific intent to commit a robbery. Second, Grant contended that the evidence was insufficient to show that he “carried” a firearm at the time he tried to enter the jewelry store, since none of the witnesses could identify the object he cradled in his hoodie pocket. The motion was denied.
Following the case’s submission, the jury found the defendant guilty as charged of both counts. After a separate hearing, the trial court sentenced Grant to fifteen years imprisonment with a ten-year mandatory minimum, pursuant to section 775.087(2), Florida Statutes (2010), on the attempted robbery charge and to time served on the other charge.

Grant’s Intent to Commit Robbery

In his first issue on appeal, Grant contends that the trial court erred in denying his motion for judgment of acquittal as to attempted armed robbery, since the State failed to demonstrate his intention to *1083 commit a robbery at the time he tried to enter the jewelry store. However, the surrounding circumstances, including Grant’s unusually forceful entry attempt, his attire, his flight, and his admission of an economic motive, were sufficient to send the issue of his intent to the jury.
“The standard of review for the denial of a motion for judgment of acquittal is de novo.” Ortiz v. State, 36 So.3d 901, 902 (Fla. 4th DCA 2010) (citing Pagan v. State, 830 So.2d 792, 803 (Fla.2002)). “ ‘If after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.’ ” Garrido v. State, 97 So.3d 291, 298 (Fla. 4th DCA 2012) (quoting Williams v. State, 59 So.3d 373, 375 (Fla. 4th DCA 2011)).
A person’s intent to commit a crime is rarely gleaned from direct evidence. “When the evidence against a criminally accused person is circumstantial, a motion for judgment of acquittal should be granted if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt.” Brothers v. State, 853 So.2d 1124, 1125 (Fla. 5th DCA 2003). In such circumstances, “the proper task of the trial judge is to review the evidence, taking it in the light most favorable to the state, in order to determine whether there is competent evidence from which the jury could infer guilt to the exclusion of all other inferences.” Martin v. State, 728 So.2d 775, 776 (Fla. 4th DCA 1999) (citing State v. Law, 559 So.2d 187, 189 (Fla.1989)). “The State is not ... required to rebut every possible scenario which could be inferred from the evidence. Rather it must introduce competent evidence which is inconsistent with the defendant’s theories.” Schwarz v. State, 695 So.2d 452, 454 (Fla. 4th DCA 1997) (citing Law, 559 So.2d at 189).
Robbery is “the taking of money or other property ... with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.” § 812.13(1), Fla. Stat. (2010). “[T]o prove attempted armed robbery, the State must show: (1) the formation of an intent to commit the crime of robbery; (2) the commission of some physical act in furtherance of the robbery; and (3) the use of a firearm.” Franqui v. State, 699 So.2d 1312, 1317 (Fla.1997). “The overt act necessary to fulfill the requirements of attempted robbery ... must be adapted to effect the intent to commit the crime; it must be carried beyond mere preparation, but it must fall short of executing the ultimate design.” Mercer v. State, 347 So.2d 733, 734 (Fla. 4th DCA 1977) (citing Gustine v. State, 86 Fla. 24, 97 So. 207 (1923); Groneau v. State, 201 So.2d 599 (Fla. 4th DCA 1967)).
“The intent with which an act is accomplished is an operation of the mind.” C.E. v. State, 342 So.2d 979, 980 (Fla. 2d DCA 1976). “Because direct evidence of intent is rare, and intent is usually proven through inference, ‘a trial court should rarely, if ever, grant a motion for judgment of acquittal on the issue of intent.’ ” Manuel v. State, 16 So.3d 833, 835 (Fla. 1st DCA 2005) (quoting Washington v. State, 737 So.2d 1208, 1215 (Fla. 1st DCA 1999)).
In the context of attempted armed robbery, “intent may be proved by considering the conduct of the accused and his colleagues before, during, and after the alleged attempt along with any other relevant circumstances.” Franqui, 699 So.2d at 1317 (citing Cooper v. Wainwright, 308 *1084 So.2d 182, 185 (Fla. 4th DCA), cert. dismissed, 312 So.2d 761 (Fla.1975)). However, the State “must present some competent, substantial evidence from which the jury could infer the defendant’s intent to deprive the victim of property.” Fournier v. State, 827 So.2d 399, 401 (Fla. 2d DCA 2002). Mere suspicion, by itself, is insufficient. Ballard v. State, 923 So.2d 475, 482 (Fla.2006).
Grant relies primarily upon Rose v. State, 68 So.3d 377 (Fla. 5th DCA 2011), as an example of unsubstantiated intent.[2] However, that case is distinguishable because there were fewer markers in Rose of an economic motive for the crime than existed in this case.
In Rose, the victim stepped outside her home after a woman rang her doorbell and asked for directions. Id. at 378. While the victim was talking to the woman, the defendant “came out from behind a bush,” pointed a gun at the victim’s face, and told the victim to keep quiet. Id. Terrified, the victim took off running and called the police. Id. After the women were apprehended, police found numerous suspicious items in their car, including cell phones, pairs of gloves, a black duffel bag containing duct tape, a crowbar, a shotgun, and ammunition. Id. at 379.
Upon these facts, the Fifth District held that the trial court erred in denying the defendant’s motion for judgment of acquittal since there was insufficient evidence demonstrating the defendant’s intent to commit robbery. Id. Significant in Rose was that the evidence was as suggestive of an intent to commit a number of crimes against the person — false imprisonment, kidnapping, sexual battery — as it was of the crime of robbery. Id.
No similar confusion exists over Grant’s aborted entry into the jewelry store. After parking his car in a secluded area and taking a route minimizing potential observation, Grant “forcefully” yanked twice on the jewelry store’s door, demonstrating his desire to make a .startling, powerful entrance. By covering his face with a do-rag, wearing a hoodie and gloves on a hot day, and taking flight immediately upon his failed entry, the circumstances indicated that Grant’s purpose was nefarious. This “purpose” was, in turn, narrowed by the handcuffs and purple velvet bag found on Grant’s person, suggesting that his “plan” involved taking jewelry from the store. Finally, Grant admitted that his actions had an economic motive when he explained his conduct by saying, “Times are tough.”
Viewing the evidence in the light most favorable to the State, a rational trier of fact could find the evidence sufficient to negate the theories of innocence that Grant was either an innocent passerby or, borrowing from Rose, that he might have intended to commit any number of crimes inside the store. The trial court properly allowed the issue to go to the jury. From the State’s evidence, the jury could properly infer that Grant’s intent at the door of the jewelry store was to steal property inside.

Whether Grant “Carried” a Firearm During the Attempted Robbery

Grant argues that the trial court erred in denying his motion for judgment of acquittal on the firearm aspect of the attempted robbery charge because the evi *1085 dence was insufficient that he “carried” a firearm within the meaning of section 812.13(2)(a), Florida Statutes (2010). Applying section 812.13(3)(a), we hold that the evidence at trial supported the jury’s finding that Grant “carried a firearm” “in the course of committing” the attempted robbery.
Section 812.13(2)(a) enhances a robbery to a first degree felony if a robber “car-nets] a firearm” “in the course of committing the robbery.” We agree with Grant that the evidence was insufficient to support the conclusion that he carried a firearm when he was at the door of the jewelry store and when he ran to his car. See, e.g., Prosser v. State, 742 So.2d 400 (Fla. 1st DCA 1999); Butler v. State, 602 So.2d 1303 (Fla. 1st DCA 1992).
However, section 812.13(3)(a) expressly defines the phrase “in the course of committing the robbery” to include a robber’s flight after an attempted robbery, providing:
An act shall be deemed “in the course of committing the robbery” if it occurs in an attempt to commit robbery or in flight after the attempt or commission.
§ 812.13(3)(a), Fla. Stat. (2010).
The police began chasing Grant’s car soon after he left the scene of the attempted robbery. When Grant’s car was stopped, the handgun was within his immediate physical reach on the passenger seat, underneath his hooded sweatshirt. A common meaning of the verb “carry” is to “convey” or “transport.” Random House Dictionary of the English Language 227 (unabridged ed. 1967). By driving away with the gun right next to him, Grant conveyed or transported it, so he “carried” the gun during his flight from the jewelry store. Therefore, Grant “carried a firearm” “in the course of committing” the attempted robbery under section 812.13(2)(a).
This holding is close to one of the holdings in Parker v. State, 570 So.2d 1048, 1053 (Fla. 1st DCA 1990). There, the police chased a defendant down 1-10 shortly after he committed a robbery at a rest area. Id. at 1050. After the car crashed to a stop, the defendant attempted to flee, with “a revolver in his right hand as he ran away.” Id. at 1051. The First District held that such “possession of a firearm during flight from the robbery” was sufficient evidence that the defendant violated section 812.13(3)(a). Id. at 1053.

The Validity of Grant’s Ten-Year Mandatory Minimum Sentence

As his final issue on appeal, Grant challenges the legality of the ten-year mandatory minimum portion of his sentence, entered pursuant to Section 775.087(2)(a), Florida Statutes (2010). We reverse because Grant was not charged under section 775.087(2)(a) with actually possessing a firearm “during the commission of the offense,” nor did the jury make such a finding. Rather, both the amended information and the special interrogatory submitted to the jury focused on whether Grant “carried” a firearm; the issue framed by the pleadings and the jury instructions was whether -a section 812.13(2)(a) violation occurred. The jury’s finding under section 812.13(2)(a) was insufficient to satisfy the requirements of section 775.087(2)(a).
There is a significant difference in the way sections 812.13(2)(a) and 775.087(2)(a)l.c. treat the use of a firearm. A finding that the defendant “carried” a firearm under section 812.13(2)(a) reclassifies robbery into a higher degree of felony, increasing the potential maximum of punishment.
Section 775.087(2)(a)l.c., on the other hand, subjects defendants convicted *1086 of actually possessing firearms during the commission of a robbery to a ten-year mandatory minimum sentence. The statute’s applicability is predicated on the defendant being “found to have been in actual possession of the firearm.” Arnett v. State, 128 So.3d 87, 87 (Fla. 1st DCA 2013); Hough v. State, 448 So.2d 628, 629 (Fla. 5th DCA 1984) (interpreting section 775.087(2) to mean that mandatory minimum sentencing may be imposed only if the defendant has actual, as against vicarious, possession of the firearm); Wallace v. State, 929 So.2d 695, 697 (Fla. 4th DCA 2006) (holding that a finding of “possession,” as against “actual possession,” is insufficient).
To “enhance a defendant’s sentence under section 775.087(2), the grounds for enhancement must be clearly charged in the information.” Arnett, 128 So.3d at 88. “ ‘It is a basic tenet of constitutional law that due process is violated when an individual is convicted of a crime not charged in the charging instrument.’ ” Terry v. State, 14 So.3d 264, 266 (Fla. 4th DCA 2009) (quoting Castillo v. State, 929 So.2d 1180, 1181 (Fla. 4th DCA 2006)).
This is a case that demonstrates why a finding that Grant “carried” a firearm within the meaning of section 812.13(2)(a) is not equivalent to a finding that he “actually possessed” the gun under section 775.087(2)(a)l. The key to the analysis is that section 775.087(4) explicitly defines “possession” in a way that narrows the type of constructive possession that qualifies for the mandatory minimum sentence.
Under section 775.087(2)(a)l., the ten-year mandatory minimum applies when a defendant committed, or attempted to commit, an enumerated felony and, “during the commission of the offense,” the defendant “actually possessed a ‘firearm’ or ‘destructive device’ as those terms are defined in s. 790.001.” Section 775.087(4) provides that,
[f]or purposes of imposition of minimum mandatory sentencing provisions of this section, with respect to a firearm, the term “possession” is defined as carrying it on the person. Possession may also be proven by demonstrating that the defendant had the firearm within immediate physical reach with ready access with the intent to use the firearm during the commission of the offense, if proven beyond a reasonable doubt.
(Emphasis added). Thus, if a defendant is not “carrying” a firearm “on his person,” the State must prove beyond a reasonable doubt not only that the firearm was “within immediate physical reach with ready access” but that the defendant also had “the intent to use the firearm during the commission of the offense.” Section 812.13(2)(a) does not require the jury to make any finding about a defendant’s intent to use the firearm in deciding the issue of whether a defendant “carried” a firearm.
In this case, the amended information alleged that, during the commission of the attempted robbery, Grant “carried a firearm or other deadly weapon” and cited only to sections 812.13(1) and 812.13(2)(a), pertaining to robbery. As to the firearm portion of the charge, the jury was instructed:
If you find the defendant guilty of the crime of attempted robbery, then you must further determine beyond a reasonable doubt if “in the course of committing the armed robbery” the defendant carried a firearm. An act is “in the course of committing the attempted robbery” if it occurs during the commission of the crime or in flight after the attempt.
If you find that the defendant carried a firearm in the course of committing the *1087 attempted robbery, you should indicate so on the verdict form.
On the verdict form, the jury found that “the State has shown beyond a reasonable doubt that the defendant carried a firearm.”[3] The jury did not find that the firearm was “within immediate physical reach with ready access,” nor did it find that Grant had “the intent to use the firearm during the commission of the offense.” The jury must make both findings to support the imposition of a ten-year mandatory minimum sentence under section 775.087(2)(a)l. A defendant could have a firearm within immediate physical reach with ready access, but lack the intent to use the firearm during the commission of the offense sufficient to satisfy section 775.087(2)(a)l.
We distinguish this case from Parker, 570 So.2d 1048. That case held in part that a finding that a defendant carried a firearm under section 812.13(8)(a), Florida Statutes (1989), was sufficient to “support imposition of the three-year mandatory minimum sentence” under section 775.087(2)(a), Florida Statutes (1989). Id. at 1053. That version of the statute differs from the current version of section 775.087; the 1989 version of the statute involved “possession” of a firearm rather than “actual possession,” and there was no complement to section 775.087(4) to shape the contours of such “possession.” Chapter 95-184, § 19, Laws of Florida, rewrote section 775.087(2)(a) to provide for a ten-year mandatory minimum where a person “actually possessed” a firearm during the commission of enumerated offenses; Chapter 99-12, § 1, Laws of Florida, added section 775.087(4).
While the jury’s finding adequately satisfied section 812.13(2)(a)’s reclassification requirements, it was insufficient to warrant imposition of a ten-year mandatory minimum sentence pursuant to section 775.087(2).
Accordingly, we reverse the mandatory minimum sentence and remand the case for resentencing.
DAMOORGIAN, C.J., and KLINGENSMITH, J., concur.

. We also affirm the denial of Grant’s motion to sever the two charges. We note that possession of a firearm with an altered serial number is some evidence that the possessor intends to use the gun for a criminal act, because of the difficulty of tracing the firearm. As the Fourth Circuit has observed:
The Bureau of Alcohol, Tobacco, Firearms and Explosives has explained that requiring serial numbers on firearms serves the important governmental interests of enabling the tracking of inventory and record-keeping by licensees; tracing specific firearms used in crimes; identifying firearms that have been lost or stolen; and assisting in the prosecution of firearm offenses.
United States v. Harris, 720 F.3d 499, 502-03 (4th Cir.2013).

. Grant also relies upon Thomas v. State, 349 So.2d 743 (Fla. 1st DCA 1977), but that case is of little help. Thomas was reversed for a new trial because hearsay was admitted to prove the crime the defendant intended upon entering a residence. Thomas is not a case that evaluated whether the quantum of evidence of intent was enough to survive a motion for judgment of acquittal on an attempted robbery charge.

. Interestingly, the jury was concerned about this issue. They sent out a question asking if "to carry" a firearm was to be on one’s person or to be in possession of a gun. The court advised the jury that they were required to rely on the instructions they had already received. The judge did not charge the jury with the definition of "possession” found in section 775.087(4).