DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**TYRON TERRANCE ROBERTS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-4474

[ November 19, 2014 ]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Robert L. Pegg, Judge; L.T. Case No. 312010CF001562A.

Carey Haughwout, Public Defender, and Peggy Natale, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Matthew Steven Ocksrider, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

After a jury trial, appellant, Tyron Terrance Roberts, was found guilty as charged of robbery with a deadly weapon. As his sole issue on appeal, appellant challenges the ten-year mandatory minimum portion of his sentence, imposed pursuant to section 775.087(2)(a)1., Florida Statutes (2010). He argues that the mandatory minimum term should be vacated because it cannot be determined that the jury clearly found that he actually possessed a firearm during the commission of the robbery. This is so, he argues, because the jury was instructed as part of the robbery jury instruction that "an act is in the course of committing the robbery if it occurs in an attempt to commit the robbery or in flight after the attempt or commission." Citing *Lemus v. State*, 33 So. 3d 774 (Fla. 4th DCA 2010), appellant contends that, for purposes of the mandatory minimum for actual possession of a firearm during the course of a crime under section 775.087(2)(a), the possession must actually be during the commission of the crime itself and not during the temporal episode surrounding the crime. We disagree and affirm the mandatory minimum term, because the

jury's finding that appellant actually possessed a firearm, even during flight from the robbery, would be sufficient to satisfy the requirements of section 775.087(2)(a).

On the day of the robbery, a man wearing a bandana and blue shirt approached a bank teller at her station and handed her a note. The note stated, "Give me money I have a gun." The man whispered to her that he really did have a gun. The teller never actually saw a gun or any kind of bulge in the man's clothes. But because he said he had a gun, she was frightened and complied with his demands. She opened her cash drawer and removed approximately $2,300. She also put a bait (GPS tracker) with the cash before she pushed it towards him. The man took the money and the note and left the building. The teller notified her supervisor that she had been robbed. The police arrived and the teller spoke to a detective.

A detective received a call from dispatch that the robbery suspect's vehicle was located at a citrus packing plant. When the detective arrived at the plant, he observed appellant running from a Jeep. The detective chased appellant to the loading dock of the plant. Appellant tried to climb the loading dock platform, but his foot got caught on the bay door and he fell to the ground. The detective was approximately fifteen feet behind appellant and saw a gun slide out from appellant's waistband. Appellant attempted to recover the gun, but it slid away from his grasp.

Appellant got up and ran into the packing plant while the detective continued to chase him. When the detective eventually apprehended appellant, they were outside the plant. The detective searched appellant and asked him if he had any weapons on his person. Appellant responded, "you already saw the one gun, what [do] you think I do, carry two."

An employee of the citrus plant witnessed appellant attempt to enter the plant through the loading dock. The employee saw appellant fumbling around the floor and trying to get to his feet. He also saw appellant drop a gun. When appellant and the detective ran by, the employee stood by the gun to make sure that no one else came and moved it. He stayed with the gun until an officer returned to take custody of it. Other evidence collected near or inside the Jeep included a wig, a bandana, a blue shirt, and a stack of money with a concealed GPS tracker.

A firearm examiner for the Indian River Crime Laboratory found the gun was in working order, but the firearm was not submitted for DNA testing and no usable prints were found on it.

Once detectives apprehended appellant, they drove the bank teller to the citrus plant. She identified appellant as the person who robbed the bank.

The detective who interviewed appellant after he was detained asked appellant, "When did you make up your mind that you were going to rob that bank?" Appellant responded, "It was a last second decision. (Inaudible) just doing bad, man. Things just been going bad for me." Later, appellant again explained that he just needed money because he had not worked and things were not going right for him.

The detective asked appellant if he pulled a gun on the teller. Appellant denied having a gun in his possession when he was in the bank. He said that he did not threaten the teller with the gun; he just told the teller to give him the money. He later admitted that the note he handed to the teller stated that he had a gun. He also admitted to the detective that the gun fell out of his pocket when he fled from the Jeep at the citrus plant.

Appellant was charged in Count I of the Information with Robbery with a Deadly Weapon. The Information alleged that:

> Tyron Terrance Roberts did take certain property, to-wit: U.S. Currency, from the person or custody of [the bank teller] or [the bank], with the intent to permanently or temporarily deprive the said person or owner of the property, and in the course of the taking there was the use of force, violence, assault, or putting in fear, *and during the course of the commission of the robbery, the defendant actually possessed a firearm, in violation of Florida Statutes 775.087 (10/20/Life),* 812.13(1) and 812.13(2T)(a).

(Emphasis added).

Appellant testified at trial and denied committing the robbery. He said that he confessed during the police interrogation only to protect the driver of the Jeep from being charged. On cross-examination, appellant said that he never had a gun and denied knowledge of the note used in the robbery. When asked about his response to the detective's questions about his possession of a gun—"you already saw the one gun, what [do] you think I do, carry two"—appellant acknowledged that he "may have said that."

The trial court instructed the jury:

To prove the crime of robbery, the State must prove the following four elements beyond a reasonable doubt. One, Tyron Roberts took the money from the person or custody of [the bank teller] or [the bank]. Two, force, violence, assault or putting in fear was used in the course of the taking. Three, the property taken was of some value. Four, the taking was with the intent to permanently or temporarily deprive [the bank teller] or [the bank] of her right to the property or any benefit from it or appropriate the property of [the bank teller]or [the bank] to his own use or the use of any person not entitled to it.

The phrase in the course of the taking means that the act occurred prior to, contemporaneous with or subsequent to the taking of the property, that the act and the taking of the property, that the act and the taking of the property constitute a continuous series of acts or events.

. . . .

An act is in the course of committing the robbery if it occurs in an attempt to commit the robbery or in flight after the attempt or commission.

The jury found appellant guilty of robbery and indicated on the verdict form their finding that the "defendant actually possessed a firearm in the course of committing the robbery." Appellant was sentenced to thirty years in prison, with a ten-year minimum mandatory sentence pursuant to section 775.087(2)(a), Florida Statutes (2010).

While appellant's appeal was pending, appellant filed two motions to correct sentencing error, contending that the ten-year mandatory minimum was an illegal sentence. In both motions, appellant argued that because of the language used on the verdict form, it was not clear whether the jury found that appellant possessed a firearm "during the commission" of the robbery, or "in the course of committing" the robbery. The trial court denied the motions.

In *Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013), the United States Supreme Court held that, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any fact that increases the mandatory minimum sentence for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt.

In Florida, a criminal defendant faces an enhanced mandatory minimum sentence when the defendant possesses a firearm during the commission of an enumerated offense:

> Any person who is convicted of a felony or an attempt to commit a felony, regardless of whether the use of a weapon is an element of the felony, and the conviction was for:
>
> . . . .
>
> c. Robbery;
>
> . . . .
>
> *and during the commission of the offense*, such person actually possessed a "firearm" or "destructive device" as those terms are defined in s. 790.001, shall be sentenced to a minimum term of imprisonment of 10 years . . . .

§ 775.087(2)(a)1., Fla. Stat. (2010) (emphasis added).

The Florida Supreme Court clarified the jury findings necessary for imposing the mandatory minimum enhancement under section 775.087(2)(a), Florida Statutes, in *State v. Iseley*, 944 So. 2d 227 (Fla. 2006). After reviewing earlier cases where the court considered the sufficiency of a jury verdict to support penalty enhancements mandated by section 775.087(2)(a), the court reiterated its requirement that the enhanced penalty be predicated upon a 'clear jury finding' that the defendant possessed a firearm during the commission of the felony. *Iseley*, 944 So. 2d at 230 (quoting *State v. Hargrove*, 694 So. 2d 729, 731 (Fla. 1997)). "This requisite 'clear jury finding' can be demonstrated either by (1) a specific question or special verdict form (which is the better practice), or (2) the inclusion of a reference to a firearm in identifying the specific crime for which the defendant is found guilty." *Id.* at 231 (citing *Tucker v. State*, 726 So. 2d 768, 771-72 (Fla. 1999) and *State v. Overfelt*, 457 So. 2d 1385, 1387 (Fla. 1984)).

Appellant argues that it cannot be determined that the jury clearly found that appellant actually possessed a firearm during the commission of the robbery, given the unique facts in this case and the robbery jury instructions and interrogatory, because the jury was instructed as part of the robbery jury instruction that "an act is in the course of committing the robbery if it occurs in an attempt to commit the robbery or *in flight after the attempt or commission*." Further, the jury did not find that he had

actual possession of a firearm "during the commission of the offense," but instead found that appellant had possession of a firearm "in the course of committing the robbery."

Relying on *Lemus v. State*, 33 So. 3d 774 (Fla. 4th DCA 2010), appellant contends that for purposes of the mandatory minimum for actual possession of a firearm during the course of a crime under section 775.087(2)(a), the possession must actually be during the commission of the crime itself and not during the temporal episode surrounding the crime. Here, he argues, the robbery instructions allowed the jury to find that appellant actually possessed the firearm during the commission on the robbery based on events that occurred during his flight.

*Lemus* is inapplicable to the facts of this case. There, the defendant was charged with two counts of aggravated assault with a firearm on a law enforcement officer and one count of discharging a firearm in public. *Id.* at 774. He was found guilty and sentenced to the mandatory minimum under section 775.087(2)(a)2 for discharging a firearm or destructive device during the commission of a felony.

On appeal, we held that the evidence could not support a finding that the defendant discharged a firearm during the commission of the felony, aggravated assault. *Id.* The aggravated assaults were committed when the defendant, using a gun, threatened and placed the officer in fear. *Id.* at 775-776. Because the defendant fired the shots seven hours prior to pointing the gun at the officers, it could not be said that defendant discharged the gun "during the commission" of the aggravated assault offenses. *Id.* at 776.

*Lemus* can be distinguished from this case because the defendant in *Lemus* was charged with aggravated assault on a law enforcement officer under section 784.07(2)(c). Unlike the robbery statute, the aggravated assault and assault statutes[1] do not specify a period for the commission of the crime. The crime is complete once the defendant makes a threat and places someone in fear.

---

[1] Section 784.021(1)(a), Florida Statutes (2010), defines "aggravated assault" is an assault: (a) With a deadly weapon without intent to kill. "An 'assault' is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." § 784.011(1), Fla. Stat. (2010).

The crime of robbery, on the other hand, continues during flight after attempt or commission of the robbery. Section 812.13(3)(a), Florida Statutes (2010), states that "[a]n act shall be deemed 'in the course of committing the robbery' if it occurs in an attempt to commit robbery or in flight after the attempt or commission." *See Grant v. State*, 138 So. 3d 1079, 1085 (Fla. 4th DCA 2014) (noting that "section 812.13(3)(a) expressly defines the phrase 'in the course of committing the robbery' to include a robber's flight after an attempted robbery"); *Parker v. State*, 570 So. 2d 1048, 1053 (Fla. 1st DCA 1990) (holding that the defendant's possession of a firearm during flight from the robbery is sufficient to support imposition of a section 775.087(2)(a) mandatory minimum sentence).

Thus, unlike the defendant in *Lemus*, appellant was involved in a single continuous criminal episode, so that even without strong circumstantial evidence that appellant possessed the firearm at the bank, evidence that he was is actual physical possession during his flight from the robbery was sufficient to support imposition of the mandatory minimum.

Here, the jury's verdict constituted a "clear jury finding" that appellant possessed a firearm during the commission of the robbery, thus authorizing the trial court to impose the statutory minimum sentence. The information charged that appellant actually possessed a firearm during the course of the commission of the robbery, in violation of section 775.087(2)(a), and the verdict form contained an express reference to the use of a firearm in the commission of the robbery. *See Iseley*, 955 So. 2d at 231; *Grant*, 138 So. 3d at 1086 ("To 'enhance a defendant's sentence under section 775.087(2), the grounds for enhancement must be clearly charged in the information,'" and the jury must make a finding that the defendant actually possessed the gun). Accordingly, we affirm the mandatory minimum term imposed as part of appellant's sentence.

*Affirmed.*

GROSS and GERBER, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

7