# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-4629

_____

JOSHUA ANTWAN MEEKS,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Duval County.
Roberto Arias, Judge.

May 25, 2018

B.L. THOMAS, C.J.

Appellant challenges the sufficiency of the evidence admitted at trial which resulted in his convictions for armed robbery and attempted armed robbery. He does not challenge the sufficiency of the evidence of his conviction for aggravated fleeing and eluding, but that evidence is a significant part of the circumstantial evidence that formed the basis of the case at trial on the robbery charges. We hold that the State produced sufficient evidence to sustain the convictions, and thus, the trial court correctly denied Appellant's motion for judgment of acquittal.

*Facts*

At trial, one victim testified that after eating dinner with friends at a restaurant on January 24, 2013, one of her friends

wanted to show her a car she had rented, a white Chevrolet Impala, parked outside the restaurant. While the two women stood by the car, a man approached and asked if the car belonged to them. The man then demanded the women's purses and keys; when they refused, the man said he wasn't kidding, and produced a handgun. The victim testified that the man was about 5'10" tall, wearing a long, dark bluish-grey "nicer type hoodie jacket," baggy blue jeans, and athletic shoes. She testified the gun was a silver snub-nosed gun with a black handle, and that the gun recovered from Appellant's possession and admitted into evidence was very similar to the gun she saw the night of the robbery.

The victim further testified that the man approached her friend, and attempted to grab her friend's purse. She testified that the man grabbed her friend's purse, who then dropped her keys, and the man grabbed the keys and drove away in the Impala with the purse. She then ran into the restaurant and used the phone to call 911, telling the 911 operator that she and her friend had been robbed at gunpoint by a male wearing a blue "letterman" jacket. The victims did resist the robbery.

Jerrod Robertson testified that he had known Appellant for two to eight months before the crimes, and he identified Appellant at trial. Robertson testified that Appellant frequently wore a blue letterman jacket with his name on it, on top of a hooded plaid-striped jacket. Robertson testified that on January 25, 2013, he was at his brother's house when Appellant arrived in a white Impala with one other person. Robertson testified that he got in the car to go to the beach with Appellant, and when he asked Appellant where he got the car, Appellant said "Don't worry about it" and "None of your business." Robertson testified that he assumed the car was a rental, because it had a "no smoking" sticker inside of it. Robertson testified that Appellant picked up a man named Julius Williams, who rode in the Impala with Robertson and Appellant.

Robertson testified that every time he saw Appellant, Appellant had carried a firearm. Robertson described Appellant's firearm as a silver or chrome revolver with a black handle, and testified that Appellant had the gun with him that day.

2

Robertson testified that while Appellant was driving to an uncle's house to pick up some money, Appellant ran a red light and struck a station wagon, damaging the front bumper of the Impala. Appellant then stopped at a store and removed the front bumper that was hanging off of the car. When they drove into a residential subdivision, a police car pulled up behind and began following them. When Appellant pulled out of the subdivision, the police car turned on its lights and sirens, and Appellant accelerated to flee the police car, driving through another red light and fleeing from the police car at 90-100 miles per hour.

Robertson said Appellant pulled into what he presumed was Appellant's mother's neighborhood, and he and Appellant both jumped out of the car. The Impala then rolled into a retention pond.

Robertson said he jumped out of the car, because he was sure the car was stolen, as the police had no other reason to pursue the car. Robertson testified that he fled behind a house, jumped a fence and was running on a highway when police apprehended him. After looking at a still shot of the restaurant's video footage of the robbery, Robertson identified Appellant as the robber, because the robber was wearing the same letterman jacket that he had always seen Appellant wear, and which had a name printed on the chest.

Officer Tamara Hardin of the Jacksonville Sheriff's Office testified that on January 26, 2013, she was flagged down by a citizen who saw a hit and run. Officer Hardin observed a white four-door vehicle with front-end damage at a gas station. Hardin testified that she called the car's tag number into dispatch and began following it, but waited to activate her lights and siren until other police units arrived. The tag number of the vehicle with front-end damage came back as a vehicle involved in a carjacking. When another officer came to assist her, Officer Hardin turned on her lights and siren to initiate a traffic stop; the car did not stop, but pulled out of the subdivision they were in, and ran around several cars to make a left turn into traffic against a red light. Hardin was at this point able to identify the car as a Chevy Impala. Hardin said she pursued the car into a subdivision, and found the vehicle stopped next to a pond. One

3

male, later identified as Julius Williams, was standing next to the car and was immediately detained.

Officer Hardin testified that a resident of the subdivision said she saw someone jump her fence, and officers "set up a perimeter" around the rear area of the subdivision. Hardin testified that officers eventually detained the other two people who had fled from the Impala.

The testimony of Kurt Zamor, formerly of the Jacksonville Sheriff's Office, was perpetuated, and a video of his testimony was played at trial.[*] Zamor testified that he went to the subdivision where Appellant was eventually detained in response to a call from Officer Hardin, and when he arrived, the Impala was already heading into the retention pond. He saw someone later identified as Appellant walking on the sidewalk about 800-1,000 feet from the retention pond, and he rolled down his car window and asked to speak to Appellant. Zamor asked if he could pat Appellant down, and while patting him down, Zamor felt a hard object which he believed to be a weapon; he handcuffed Appellant and took a gun from Appellant, which was the same gun introduced into evidence. Zamor arrested Appellant for possession of a concealed firearm without a license.

After the State rested, Appellant moved for judgment of acquittal. Appellant argued that the State failed to prove identity on the charges of armed robbery and attempted armed robbery, as one of the two alleged victims did not testify at trial and the witness who testified she was a victim of the robbery could not identify the man who robbed her. The trial court denied the motion. The jury found Appellant guilty of armed robbery, attempted armed robbery, and fleeing or attempting to elude law enforcement.

---

[*] Zamor was on leave without pay from the United Nations, where he worked as a police advisor, due to pending federal criminal charges for selling firearms without a license.

4

*Analysis*

In Florida, appellate courts must apply a "special standard of review" regarding criminal convictions based solely on circumstantial evidence of the defendant's identity. *Knight v. State,* 186 So. 2d 1005, 1009-10. (Fla. 2016) (*Knight II*). In *Knight II,* the supreme court rejected the view that the special standard of review should be reconsidered and abandoned:

> This Court has described the circumstantial evidence standard as follows: "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt[,] a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." *Jaramillo v. State,* 417 So. 2d 257, 257 (Fla. 1982). The standard applies upon appellate review, *id.,* and when a trial judge rules on a motion for judgment of acquittal, *State v. Law,* 559 So. 2d 187, 188 (Fla. 1989). In the instant opinion, the Fifth District engaged in a lengthy discussion about why this Court should reconsider use of this standard in Florida. *Knight,* 107 So. 3d at 455-62. However, we find that discussion and the rationale raised by the State to be unpersuasive. Accordingly, we uphold the continued use of the standard in Florida. Having done so, we next address the certified conflict issue by clarifying when the standard applies.

*Id.* Justice Canady concurred in result, stating:

> As Judge [now Justice] Lawson cogently explains, the special standard of review is both confusing and misleading. *See Knight v. State,* 107 So. 3d 449, 456-61 (Fla. 5th DCA 2013). It is a striking and inexplicable anomaly that we have rejected the reasonable-hypothesis-of-innocence jury instruction but have nonetheless retained the special standard of review. I agree with Judge Lawson that this anomaly in our jurisprudence should be corrected by eliminating the special standard of review.

*Id.* at 1013.

5

This unique standard of review was rejected by the United States Supreme Court sixty-four years ago in *Holland v. United States*:

The petitioners assail the refusal of the trial judge to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions, but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect.

*Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.*

348 U.S. 121, 139-40 (1954) (emphasis added; citations omitted).

In *Knight v. State*, 107 So. 3d 449, 456-58 (Fla. 5th DCA 2013) (*Knight I*), the Fifth District noted that most states now have rejected the special rule, as have all federal courts since 1982. And in Florida, no special jury instruction is given to require juries to apply more strict scrutiny to circumstantial evidence, as both Justice Canady and the Fifth District noted in *Knight I,* observing that Florida was only one of three states to take the "somewhat discordant" view that a special appellate standard of review applies to circumstantial criminal convictions, but a jury cannot be instructed to apply a different evaluation of circumstantial evidence. *Id*. at 456-57.

We are bound to apply the special standard as required by *Knight II*. And in applying that standard here, we hold that the

6

State presented sufficient evidence to the jury to affirm the judgment of guilt.

In *State v. Law,* the supreme court, in reversing this court in a case where it held the circumstantial evidence was not sufficient, stated:

> Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. *The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse.*

559 So. 2d 187, 188 (Fla. 1989) (citations omitted; emphasis added). In addition to this guidance, we know we must view all the evidence in a light most favorable to the verdict, guilt, and draw every reasonable inference in favor of the state, the prevailing party. *Lynch v. State,* 293 So. 2d 44, 45 (Fla. 1974).

Applying these rules here, cognizant that the testimony of the witness identifying Appellant's image from the crime videography could lead us to reject the "special standard of review," but assuming *arguendo* that the special standard of review applicable to circumstantial criminal convictions must be utilized, we conclude that the following provides "substantial, competent evidence to support the jury verdict," as delineated by *Law*:

1. The victim's stolen rental car was driven by Appellant, soon after the robbery, who led the police on a high-speed chase;

2. The Appellant drove the stolen car into his mother's neighborhood;

3. The gun removed from Appellant's possession was the gun used during the crime; and

7

4. Appellant was identified by witness Robertson, who was a passenger in the stolen car, as the person in the robbery video.

Section 812.13(1), Florida Statutes, defines robbery as follows:

> "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

Section 812.13(2)(a) adds an element for armed robbery: "If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable . . . as provided in s. 775.082, s. 775.083, or s. 775.084." "[T]o prove attempted armed robbery, the State must show: (1) the formation of an intent to commit the crime of robbery; (2) the commission of some physical act in furtherance of the robbery; and (3) the use of a firearm." *Franqui v. State,* 699 So. 2d 1312, 1317 (Fla. 1997). "In the context of attempted armed robbery, 'intent may be proved by considering the conduct of the accused and his colleagues before, during, and after the alleged attempt along with any other relevant circumstances.'" *Grant v. State*, 138 So. 3d 1079, 1083 (Fla. 4th DCA 2014) (quoting *Franqui*, 699 So. 2d at 1317). Here, the security footage from the restaurant showed a man grabbing at and eventually taking a purse and car from two women at gunpoint, thus establishing that the man in the video committed all the elements of robbery and attempted robbery.

As also held in *Lynch,* when evidence adequately supports two conflicting theories, it is the appellate court's duty to review the record in the light most favorable to the prevailing theory. *Johnson v. State*, 660 So. 2d 637, 642 (Fla. 1995). "The testimony of a single witness, even if uncorroborated and contradicted by other State witnesses, is sufficient to sustain a conviction." *I.R. v. State*, 385 So. 2d 686, 688 (Fla. 3d DCA 1980).

8

Here, there is ample circumstantial evidence that excludes any reasonable hypothesis of innocence, that is, that Appellant was not the perpetrator.  In fact, the "hypothesis" that Appellant is not the perpetrator is quite unreasonable.  Adding all the facts together, and all reasonable interferences drawn therefrom, we hold the evidence is sufficient as a matter of law to uphold Appellant's convictions and the judgment below.

Thus, the judgment is AFFIRMED.

JAY and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, Maria Ines Suber, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Heather Flanagan Ross, Assistant Attorney General, Tallahassee, for Appellee.